DISTRICT OF OREGON: ss,                    AFFIDAVIT OF GUY GINO

### Affidavit in Support of a Criminal Complaint

I, Guy Gino, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses.  I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon.  Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996.  I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations.  I am currently detailed to the High Intensity Drug

Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and Organized Crime Division (NOC).

2. This affidavit is based on a joint investigation conducted by Portland Police Bureau (PPB) and Homeland Security Investigations (HSI).

### Purpose of Affidavit

3. This affidavit is submitted to support a criminal complaint and arrest warrant for, William Sanchez STEVENSON, a male, date of birth xx/xx/1997 (hereinafter referenced as "STEVENSON"), for committing the crimes of Possession With Intent to Distribute 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B); and, Possession of Fentanyl, in violation of Title 21, United States Code, Section 844(a).

4. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations. I have not set forth all of my knowledge of this investigation.

### Summary of Probable Cause

**March 3, 2023**

5. On March 3, 2023, Portland Police Bureau Central Precinct Bike Patrol officers were conducting street level drug distribution enforcement duties in Downtown Portland, Oregon. While observing an area which has received a large volume of complaints for open air drug dealing and use, Officers witnessed an individual later identified as STEVENSON walk up

**Affidavit of Special Agent Guy Gino**                                                                                       **Page 2**

to an unknown individual in a vehicle near the corner of SW 4th and SW Washington Street in downtown Portland, Oregon.  STEVENSON was observed handing US currency to the vehicle's occupant through the passenger side window and then was observed retrieving his hand from the vehicle which was containing a bag in his hand.  Officers identified this behavior as an apparent drug "re-up" from a source of supply in a vehicle.  Officers observed the vehicle drive away and then watched STEVENSON walk towards a group of individuals who had been waiting nearby.  STEVENSON was approached by a group of 7 to 8 individuals who were then observed placing US currency in STEVENSON's hand and STEVENSON was in turn observed handing those individuals what appeared to be a crystalline substance from a clear bag he held.  STEVENSON was observed conducting these transactions with the various people in rapid succession.

6.      As Officers approached STEVENSON fled and while he was running attempted to take off his jacket and backpack.  Within four blocks STEVENSON was taken into custody by Officers from the Portland Police Bureau.  During a search incident to his arrest, on STEVENSON Officers located approximately 30.3 grams of fentanyl powder in packaging, 98.2 grams of blue fentanyl pills (estimated to be 944 pills by weight conversion), 15.6 grams of methamphetamine in packaging, approximately 7 clear plastic sandwich type bags similar to the one the methamphetamine had been stored in, $356 in US currency, a small black Nike bag, and a cellular phone.  Portland Police Bureau officers field tested the drugs and received a positive result for fentanyl from the powder and a positive result for methamphetamine from the crystalline substance.  I know that both fentanyl and methamphetamine are Schedule II controlled substances.

**Affidavit of Special Agent Guy Gino**                                                                                    **Page 3**

7.     STEVENSON was advised of his constitutional *Miranda* rights by Officer Eli Arnold and he agreed to answer questions. STEVENSON was asked if the powder found in his possession was fentanyl and the crystal substance was methamphetamine and he said yes. STEVENSON admitted that he sells drugs downtown approximately 3 times per week and has been doing so for the past three months. He said that he sells blues, which I know is a reference to blue counterfeit M30 pills manufactured with fentanyl, for $2 and buys them for $1.10. Officer Arnold asked how long it takes him to sell the quantity of drugs he was found with and he said about a week and a half.

8.     Based on his statements, a conservative tally of STEVENSON's sales based on the numbers he provided, STEVENSON has sold approximately 7,500 fentanyl pills (780 grams), 242 grams of fentanyl powder, and 124 grams of methamphetamine during the three months prior to his arrest.

9.     STEVENSON was transported and lodged into custody at Multnomah County Detention Center.

### May 4, 2023

10.     On May 4, 2023, Portland Police Bureau Central Precinct Bike Patrol officers were conducting street level drug distribution enforcement duties in Downtown Portland, Oregon. While observing an area which has received a large quantity of complaints for open air drug dealing and use between SW 4th and SW 5th, in Portland, Oregon, Officer Eli Arnold observed STEVENSON approach a group of people standing on the sidewalk in a location frequently populated by drug users. Officer Arnold saw STEVENSON take out a bag which was either blue or was clear but which he could see contained a large number of blue fentanyl pills (counterfeit blue M30 pills manufactured with fentanyl).

**Affidavit of Special Agent Guy Gino**                                                              **Page 4**

11.     STEVENSON was seen pocketing the bag again as he approached another man that Officer Arnold knew to be allow level drug dealer. Both STEVENSON and the other individual were both observed pulling out a stack of cash and showing their respective stacks of cash to each other and then putting the cash back into their pockets. As the two people were talking , Officer Arnold observed two individuals approach STEVENSON and hand him cash which he pocketed. Officer Arnold then observed STEVENSON hand each individual fentanyl pills.

12.     Officer Arnold reported what he observed on the radio. PPB Officers then approached STEVENSON and the other known drug dealer. As the Officers approached, STEVENSON ran away and was observed by Officer Arnold throwing a bag of Fentanyl pills into the middle of SW Oak Street, in downtown Portland, Oregon, which was recovered by PPB Officer Gericke.

13.     After STEVENSON attempted to flee Officers he was subsequently apprehended in a hallway of the US BankCorp Tower located at 111 SW 5th, Portland, Oregon. When STEVENSON was taken into custody he was read his *Miranda* rights by Officer Gericke, to which STEVENSON stated he understood. During a search of STEVENSON officers found a scale, an iPhone, and suspected counterfeit M30 pills manufactured with fentanyl in baggies and loose in his pockets, a baggie of suspected methamphetamine, and some loose cash. During a search of the area in which STEVENSON was arrested officers located fentanyl pills which weighed approximately 71.2 grams (approximately 684 pills by standard weight conversion), 4.6 grams of methamphetamine in packaging, 21 grams of compressed powdered fentanyl, and $3,090 in US Currency. The suspected drugs were subject to a field

test and the suspected fentanyl tested positive for fentanyl and the suspected methamphetamine tested positive for methamphetamine.

14. Officer Arnold questioned STEVENSON who had told him that he had only been selling drugs again for two days. He said he estimated that he had 500 "blues" or fentanyl pills on his person. He confirmed that the powder he had was fentanyl and the crystalline substance was methamphetamine.

**February 14, 2024**

15. On February 14, 2024, Portland Police Bureau Central Precinct Bike Patrol officers were conducting street level drug distribution enforcement duties in Downtown Portland, Oregon. While observing an area which has received a large quantity of complaints for open air drug dealing and use in the vicinity if NW Everett Street between 4th and 5th Avenues.

16. Officer Mathew observed a large group of individuals huddled around an individual later identified as STEVENSON, who appeared to be distributing narcotics to the surrounding group. As Officer Mathew approached closer to the group, he was spotted by one of the customers who whispered something to the STEVENSON. STEVENSON turned around and made eye contact with Officer Mathew, who observed that STEVENSON was holding a baggie of white powder in his hand. When Officer Mathew asked what was STEVENSON holding, he started to place his hand with the baggie in his left coat pocket. Officer Mathew took control of STEVENSON and with the assistance of Officer Yoo placed STEVENSON under arrest. STEVENSON was issued his *Miranda* rights by Officer Mathew to which STEVENSON stated he understood his rights.

17. Officer Mathew searched STEVENSON and located a loaded black .40 caliber handgun with an extended magazine in the inner left pocket of the jacket he was wearing. Also discovered on STEVENSON was 1.8 grams of white fentanyl powder, 15.3 grams of blue fentanyl pills, 10.5 grams of fentanyl rocks, and $315 in US currency.

18. Officer Mathew could not observe a serial number on the firearm, nor any visible markings to identify a make or model. The magazine contained four (4) 40 caliber rounds of ammunition.

19. STEVENSON was transported to Central Precinct where he was issued his *Miranda* rights again by Officer Mathew to which he stated he understood. STEVENSON told Officer Matthew that he was about to smoke the fentanyl he had and he hadn't sold any drugs "today." At Central Precinct Sgt. Cioeta questioned STEVENSON as to why he had the firearm and STEVENSON stated that he has a gun for protection because he was shot in December. When he was asked about the fentanyl STEVENSON said it was for personal use and he smoke fentanyl off of foil, although officers noted that STEVENSON was not in possession of any foil or other methods used to smoke fentanyl.

20. Officers noted that when STEVENSON was arrested they discovered that he had multiple active state arrest warrants for prior drug cases in which he had been charged in state court and failed to appear for court hearings and they also noted that several of these prior cases involved the possession of firearms.

## Conclusion

21. I know, from my training and experience, that Fentanyl powder and Fentanyl pills (counterfeit M30 pills manufactured with fentanyl) are usually smoked (the pills are crushed) by burning them on a piece of tin foil and inhaling the smoke. I know that the amount

a user uses depends on their level of addiction and user will sometimes use between one and 15 to 20, or more, pills a day. I further know that powdered fentanyl is also used in very small sub-gram quantities and either inhaled or burned and the smoke is inhaled. I know that a person possessing more than 50 grams of fentanyl, either in pill or powder form, does not possess those amounts for personal use, but rather those quantities indicate possession with the intent to distribute. I also know, based upon my training and experience, that the amount of drugs seized and the way in which they were packaged, plus the presence of a scale in the May 2023, incident, is all indicative of possession with the intent to distribute.

22. Based on the foregoing, I have probable cause to believe, and I do believe, that on or about March 3, 2023, and May 4, 2023, William Sanchez STEVENSON committed the crimes of Possession with the Intent to Distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (a felony); and, that on February 14, 2024, William Sanchez STEVENSON committed the crime of Possession of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 844(a) (a misdemeanor). I therefore request that the Court issue a criminal complaint and arrest warrant for William Sanchez STEVENSON.

///

///

///

23.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin.  AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Guy Gino, Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  7:34 pm   on February   14  , 2024.

_____
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE